## W. R. Denny *v.* Sumner County *et al.*

### (*Nashville.* December Term, 1915.)

1. **TAXATION.** Personal property. Domicile.

For the purposes of taxation of personal property one must have a domicile fixed in some particular county and municipal corporation or civil district of the State. (*Post, p.* 473.)

Cases cited and approved: Allen v. Thomason, 30 Tenn., 536; Kellar v. Baird, 52 Tenn., 39; Layne v. Pardee, 32 Tenn., 232; Pearce v. State, 33 Tenn., 66; White v. White, 40 Tenn., 405; Williams v. Saunders, 45 Tenn., 60; Keelin v. Graves, 129 Tenn., 103; Hascall v. Hafford, 107 Tenn., 355; Foster v. Hall, 23 Tenn., 346; Stratton v. Brigham, 34 Tenn., 420; Sparks v. Sparks, 114 Tenn., 666; Laue v. Grand Fraternity, 132 Tenn., 235.

2. **TAXATION.** "Domicile" distinguished from "residence."

"Domicile" and "residence" are not synonymous in the law relating to *situs* for taxation; "domicile" importing a legal relation existing between a person and a particular place, based on actual residence, plus a concurrent intention to remain there as at a fixed abiding place. One may have but one domicile or legal residence, but he may have two or more residences, and he may not actually abide at his legal residence at all, but his actual residence must be his abiding place. (*Post. pp.* 473, 474.)

Case cited and approved: Tipton v. Tipton, 87 Ky., 245; Long v. Ryan, 30 Grat. (Ky.), 718.

3. **DOMICILE.** Operation of law.

The law will, from facts and circumstances, fix a legal residence for one unless he voluntarily fixes it himself. (*Post, pp.* 473, 474.)

4. **DOMICILE.** "Change of domicile." Requisites.

To constitute a change from a domicile to another domicile of choice, it is requisite that there be actual residence in the other

Denny v. Sumner County.

or new place, an intention to abandon the old domicile, and an intention of acquiring a new one at the other place. (*Post*, *pp.* 474-476.)

Cases cited and approved:   Williamson v. Osenton, 232 U. S., 619;   Gilbert v. David, 235 U. S., 561;   Berry v. Wilcox, 44 Neb., 82;   Hayes v. Hayes, 74 Ill., 312;   Jopp v. Wood, 34 L. J. Ch. N. S., 212;   Moorhouse v. Lord, 10 H. L. Cas., 272;   Pickering v. Winch, 48 Or., 500.

5. DOMICILE.   Change to domicile of origin.

There is in this State an exception to the rule that a domicile once fixed remains until another is actually acquired, arising in the event of a change from a domicile of choice to that of origin, so that, if the removal be with intent to resume the domicile of origin, it is re-acquired before it is reached, or even while the person is *in itinere*, for it reverts the moment the other is given up; but such exception is limited to changes from one country to another or from one State of the Union to another. (*Post*, *pp.* 476-479.)

Cases cited and approved:   Catlin v. Gladding, 4 Mason, 308;   Udny v. Udny, 4 L. R. H. L. Sc. App., 441;   Borland v. Boston, 132 Mass., 89;   Ayer v. Weeks, 65 N. H., 248.

6. DOMICILE.   "Change."   Intent.

The mere intention to acquire a new domicile without the fact of an actual removal and residence avails nothing;   neither does the fact of an actual removal without such intent;   and a mere change in the place of abode, though more than temporary, is not sufficient unless the intent concur. (*Post*, *pp.* 479, 480.)

Case cited and approved:   Berry v. Wilcox, 48 Am. St. Rep., 716.

Cases cited and distinguished:   Pickering v. Winch, 48 Or., 500;   Still v. Woodville, 38 Miss., 646;   State ex rel. v. Scott, 171 Ind., 349.

7. TAXATION.   Personal property.   Domicile.

Complainant, who had acquired a domicile of choice in T. county, who in 1913 sold his farm in that county and most of his personal property, who removed to S. county, intending to make

a legal residence there conditional on his finding a farm there that was satisfactory and to remain only until his son's preparatory school course was finished, and who, though he bought a farm in S. county as an investment, continued to vote in T. county and to pay taxes on personalty there, was, for the purposes of taxing his, personal property, domiciled in T. county. (*Post, pp.* 480, 481.)

Cases cited and distinguished:  Crawford v. Wilson, 4 Barb. (N. Y.), 505;  Ross v. Ross, 103 Mass., 575;  Worsham v. Ligon (Ga.), 87 S. E., 1025.

## FROM SUMNER.

Appeal from the Chancery Court of Sumner County. —J. W. STOUT, Chancellor.

ED. T. SEAY, for appellant.

GEO. W. BODDIE, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion  of the Court.

The bill of complaint was filed by Denny to enjoin the county of Sumner and the board of equalization of that county from making an assessment of complainant's personal estate and to prevent collection of taxes based on any such assessment.  The preliminary steps had been taken to assess complainant's holdings of personal property in that county at $40,000 for the year 1915, and the tax authorities of Trousdale county also

made an assessment of the property for that year in the same amount, claiming that *situs* for taxation was in the latter county.

Denny was born in Smith county, Tenn., in 1867, and had his domicile there until 1902, when he removed to Trousdale county, in this State.

In 1913 he sold his farms in Trousdale and Smith counties, and also his personal property, with only a few exceptions. He was at that time, and has since remained, a widower; he and a son fifteen years of age constituting his family.

Not finding the school advantages of Trousdale county edequate, as he thought, he considered going to Lebanon, Wilson county, or to Gallatin, Sumner county, for the purpose of placing his son in school. He was persuaded by a close personal friend who lived in Gallatin to choose the latter place, and he went there early in 1914 and placed his son at once in a boys' training school. At first he rented a house and twenty-one acres of land that surrounded it. Later, finding that this place was on the market at $10,000, he purchased it at about $8,000, but as an investment. The acreage was located in the suburbs of Gallatin and he was pursuaded by his friend that it was or would be-come valuable for subdivison purposes.

Before going to Gallatin Denny had this friend to ascertain from a leading attorney of the Gallatin bar whether his going to that place for the purpose of educating his son would operate to change his domicile; his desire being to retain his legal residence in Trous-

dale county.  He was assured that it would not.  He took up his abode, along with his son, in Gallatin for the purpose indicated, and, as he testifies, with the intent not to make it his permanent home.  The proof discloses his intention to be:  To purchase a farm in some county of this State when one could be found that was satisfactory, and to make his permanent residence at the place where it was purchased; to place his son later on in Vanderbilt University, at Nashville, and to go there and abide (if a farm had not been purchased at the time) while his son was going through a college course; and, if a farm had not been found elsewhere, to go back to Trousdale county and purchase one there when his son was through school.  He was a farmer, and proposed bringing up his son as a farmer after the education of the latter was completed.

Complainant made unsuccessful efforts to buy farms in Sumner, Williamson, and Maury counties; and, as stated, he testifies that he had no intention of residing permanently in Gallatin, or in Sumner county, unless he should succeed in making the purchase of a farm there.  The other proofs as to his contemporaneous declarations are to the effect that his intention was to retain domicile in Trousdale county; that he had no purpose to remain in Gallatin permanently, but to use it as a base for educating his son and for finding a farm in some Tennessee county; no particular county being in mind.

Denny has continued all along to vote in Trousdale county and to pay taxes on personalty there.

In this State we seem to have no reported case dealing with the subject of domicile in respect of the place of taxation of personal effects. However, we have cases in which domicile has been defined when the same had relation to other subject-matters. Some of these cases are pertinent to the one in hand. Thus *Allen* v. *Thomason,* 11 Humph. (30 Tenn.), 536, 54 Am. Dec., 55, and *Kellar* v. *Baird,* 5 Heisk. (52 Tenn.), 39 (relating to succession); *Layne* v. *Pardee,* 2 Swan (32 Tenn.), 232 (marital rights); *Pearce* v. *State,* 1 Sneed (33 Tenn.), 66, 60 Am. Dec. 135 (elective franchise); *White* v. *White,* 3 Head (40 Tenn.), 405; *Williams* v. *Saunders,* 5 Cold. (45 Tenn.) 60 (forum for probate of will) and *Keelin* v. *Graves,* 129 Tenn. 103, 165 S. W. 232, L. R. A. 1915A, 421, and *Hascall* v. *Hafford,* 107 Tenn., 355, 65 S. W., 423, 89 Am. St. Rep., 952 (exemptions). See, also, other cases discussing domicile in relations that do not furnish so close an analogy. *Foster* v. *Hall,* 4 Humph. (23 Tenn.), 346, and *Stratton* v. *Brigham,* 2 Sneed (34 Tenn.), 420 (residence for attachment purposes); *Sparks* v. *Sparks,* 114 Tenn., 666, 88 S. W., 173 (residence for divorce); and *Laue* v. *Grand Fraternity,* 132 Tenn., 235, 177 S. W., 941, L. R. A., 1915F, 1056 (forfeiture of life insurance).

For purposes of taxation of personal property one must, of course, have a domicile fixed in some particular county and municipal corporation or civil district of the State.

"Domicile" and "residence" are not synonymous in the law relating to *situs* for taxation, "domicile" im-

porting a legal relation existing between a person and a particular place based on actual residence, plus a concurrent intention there to remain, as at a fixed abiding place.

A man may have two or more residences, but only one domicile or legal residence. He must have a domicile somewhere; he can have only one; therefore, "in order to lose one, he must acquire another."

The law will, from facts and circumstances, fix a legal residence for him, unless he voluntarily fixes it himself, and, when his legal residence is once fixed, it requires both fact and intention to change it. As contra-distinguished from his legal residence, he may have an actual residence in another State or county. He may abide in the latter without surrendering his legal residence in the former, provided he so intends. His legal residence, for the purpose indicated, may be merely ideal, but his actual residence must be substantive. He may not actually abide at his legal residence at all, but his actual residence must be his abiding place. *Tipton* v. *Tipton*, 87 Ky., 245, 8 S. W., 440; *Long* v. *Ryan*, 30 Grat. (Va.), 718.

To constitute a change from a domicile to another domicile of choice, as is claimed in the instant case, three things are essential: (a) Actual residence in the other or new place; (b) an intention to abandon the old domicile; and (c) an intention of acquiring a new one at the other place. *Sparks* v. *Sparks*, supra; *Foster* v. *Hall*, supra.

The definition of "domicile" approved by the supreme court of the United States in the recent cases of *Williamson* v. *Osenton,* 232 U. S., 619, 624, 34 Sup. Ct., 442, 58 L. Ed., 758, 761 (domicile for divorce), and *Gilbert* v. *David,* 235 U. S., 561, 35 Sup. Ct., 164, 59 L. Ed., 360 (domicile for federal jurisdiction), is that given by Dicey in his Conflict of Laws (2d Ed.), p. 111. This definition is in negative form, and a change of domicile is said to be effected where there is a change of abode and "the absence of any present intention to not reside permanently or indefinitely in the new abode." The same essential factors, as we conceive, appear in the definition when thus phrased:

"As some writers express it, there must be an *animus non revertendi* and an *animus manendi* or *animus et factum. Berry* v. *Wilcox,* 44 Neb., 82, 62 N. W., 249, 48 Am. St. Rep., 706; *Hayes* v. *Hayes,* 74 Ill., 312, 316; *Jopp* v. *Wood,* 34 L. J. Ch. N. S., 212; *Moorhouse* v. *Lord,* 10 H. L. Cas., 272. The *factum* is the transfer of the bodily presence, and the *animus* is the intention of residing permanently, or for an indefinite period. A change of domicile therefore involves a question of fact and intent. The fact is easily proved because it is shown by the mere transfer of the bodily presence from the old to the new place of abode, but the intent with which the change is made is to be determined from the character of the residence, its object and purpose, in connection with the other evidence in the case. Residence in a particular place is a fact obvious to the senses, and cannot be easily mistaken, but its value in

fixing domicile is unimportant unless accompanied with an intent of remaining permanently or indefinitely or, as it is sometimes said, with no present intent of removing therefrom. Residence alone however long continued, will not effect a change of domicile. On this point the authorities speak with practically one voice." *Pickering* v.*Winch,* 48 Or., 500, 87 Pac., 763, 9 L. R. A. (N. S.), 1159, and note.

Reference may be made parenthetically to an exception recognized in this State to the rule that a domicile once fixed remains until another is actually acquired, arising in event of a change from a domicile of choice to that origin. Then, if the removal be with the intention to resume his domicile of origin, the latter is reacquired before it is reached, or even while the person is *in itinere,* "for it reverts from the moment the other is given up." *Allen* v. *Thomason,* supra, citing Story on Conflict of Laws. The doctrine touching this exception is confined, however, to changes from one country to another, or from one State of the Union to another. *Kellar* v. *Baird,* supra; Story, J., in *Catlin* v. *Gladding,* 4 Mason, 308, Fed. Cas., No. 2520; *Udny* v. *Udny,* 4 L. R. H. L. Sc. App., 441, 9 Eng. R. C., 782. The exception thus recognized in this State should be held in mind to prevent confusion in the attempted application of the language used in opinions enforcing the doctrine to instances where it has no relevancy.

In the case of *Bulkley* v. *Williamstown,* 3 Gray (Mass.), 493, it appeared that prior to the tax test date of May 1, 1853, Bulkley, an inhabitant of Williams-

town, had made preparations for removing from that town to Rock Island, Ill., and the last week of April he left Williamstown. He and his family went first to Adams, Mass., there taking rooms with board, and they were in Adams on the test date. The trial judge instructed the jury that, if plaintiff had removed from Williamstown with a *bona fide* intention of abandoning residence in that town from that time, and with no present intention of ever making it his home, still he had domicile there for purpose of taxation until he actually acquired one elsewhere. On appeal a verdict based on the instruction was sustained, and it was said:

"The question of domicile is often a difficult one; and it is a matter of surprise, considering the number of cases, that questions do not arise more frequently. The difficulty is intrinsic in determining, under the various combinations of circumstances, what constitutes habitancy or domicile, which, for most purposes at least, are the same. . . . The question in this case is: Where was the plaintiff's domicile on first day of May, 1853? Clearly not in Rock Island, Ill., for he had not taken up his abode there. But he was an inhabitant of Massachusetts for the purposes of taxation, and of some town, city or district. . . . Whether he had left Williamstown with an intent to make Adams his place of abode was a question of fact, which was left to the jury, who decided that he had not, which appears to us to be right, according to the evidence as reported."

See, also, *Borland* v. *Boston,* 132 Mass., 89, 42 Am. Rep., 424, and cases there cited.

In the case last named it appeared that a person domiciled in Boston left for an indefinite term of absence, and on leaving he had determined never to return to reside in Boston; and before May 1, 1877, he had decided to take up his residence on his return from his travels in Connecticut, and on his return in 1879 he went to Connecticut to reside. It was held that his domicile for taxation purpose on May 1, 1877, was in Boston; the court assigning as reasons for the judgment:

"Although he might have left the common-wealth with the fixed purpose to abandon it as a residence, he did not leave it on his way to a place certain which he had determined upon as his future residence, and was proceeding to with due dispatch; and upon the general rule that, having had a domicile in this commonwealth, he remains an inhabitant for the purpose of taxation until he acquired a new domicile, the intention and fact had not concurred at the time when this tax was assessed."

See, also, *Ayer* v. *Weeks,* 65 N. H., 248, 18 Atl., 1108, 6 L. R. A., 716, 23 Am. St. Rep., 37.

The mere intention to acquire a new domicile without the fact of an actual removal and residence avails nothing; neither does the fact of an actual removal without such intention. This intent is as essential as the fact of actual residence. A mere change in the

place. of abode, though more than temporary, is not sufficient, unless the intent concur.

"This intention, it is true, may be inferred from circumstances, and the residence may be of such a character and accompanied by such indices of a permanent home that the law will apply to the facts a result contrary to the actual intention of the party. Thus one cannot make a permanent, fixed commercial residence with all the surroundings of a permanent home in one place and a domicile in another by a mere mental act. But a residence for mere pleasure or health is not regarded as of any great weight in determining the question of a change of domicile." *Pickering* v. *Winch,* supra; *Still* v. *Woodville,* 38 Miss., 646; *Ayer* v. *Weeks,* supra.

In such case he does not lose his former domicile so long as his intention remains conditional, as, for example, where he may seek employment, intending to change his permanent home only if he finds it. 9 R. C. L. 553-555; *Berry* v. *Wilcox,* 48 Am. St. Rep., 716, note.

In *State ex rel.* v. *Scott,* 171 Ind., 349, 86 N. E., 409, it was said:

"So it may be . . . said that a journey into another State or territory for inspection, accompanied with an intent permanently to remove to such other State if a satisfactory place is found, does not amount to a change of residence until an approved location had been . . . discovered and chosen," etc.

We are of opinion that the chancellor held an erroneous view as to the effect of the proof. Denny's domicile remained in Trousdale county. Clearly he acquired no domicile in the town of Gallatin; his intention to remain there was not even conditional. His intention to make a legal residence in the county of Sumner may be said to have been conditional; that is, on his finding a farm there that was satisfactory. And as clearly his purpose was not to remain permanently or for an indefinite time: The limit of his purposed stay was until the preparatory school course of his son was concluded. Such a purpose falls within the spirit of the rulings above outlined. There was therefore lacking the intent that is necessary to change one's domicile.

The counsel of the county places much emphasis on his contention that the domicile in Trousdale county was abandoned, in that it is claimed that Denny left there with no fixed, absolute, and unconditional intent to return to it as his home. As we have seen, however, the case turns upon the ruling that Trousdale county was perforce his domicile until another was acquired, and such other was not acquired by a voluntary fixing of a habitation at the new place to remain conditionally or for a temporary and special purpose. 9 R. C. L., 555, section 20. Reversed, with decree here.

## On Petition to Rehear.

A petition to rehear has been filed and considered, but a re-examination of the case serves only to confirm the soundness of the views already expressed,

Denny v. Sumner County.

It so happens that the supreme court of Georgia had under consideration the question of domicile, in a case involving succession to property by will of a testator at the time we had the pending case under review. A few days before the above opinion was handed down by us, that court filed (February 26, 1916) its opinion, in which it was ruled:

"If a person actually removes to another place, with the intention of remaining there for an indefinite time as a place fixed domicile, such a place becomes his domicile. If a person leaves the place of his domicile temporarily, or for a particular purpose, and does not take up an actual residence elsewhere with the avowed intention of making a change in his domicile, he will not be considered as having changed his domicile. *Crawford* v. *Wilson,* 4 Barb. (N. Y.), 505; *Ross* v. *Ross,* 103 Mass., 575.

"If there be both actual residence and an intention of remaining—the *animus manendi*—then a domicile is established." *Worsham* v. *Ligon* (Ga.), 87 S. E., 1025.

A rehearing is denied.