### In re CONSERVATORSHIP OF William Paul ACKERMAN.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Assigned on Briefs Feb. 19, 2008.

July 29, 2008.

Permission to Appeal Denied by Supreme Court Jan. 20, 2009.

Petition for Review Denied Feb. 17, 2009.

Cathy Drake–Ackerman, Russellville, Kentucky, appellant, Pro Se.

T.J. Jones, Nashville, Tennessee, for the appellees, John R. Ackerman, Sammie A. Guthrie, and William Paul Ackerman, III.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Relatives of William Paul Ackerman ("Ward")—a brother, sister, and son— sought appointment as co-conservators of his person and property. Cathy Drake–Ackerman ("Wife") has appealed, questioning whether the probate court had jurisdiction over Ward. We hold that the evidence does not preponderate against the probate court's findings. Accordingly, we affirm.

## I.

Ward [1] suffered his first stroke and seizure in August 2002, followed by a second in February 2003, after which his sister, Sammie A. Guthrie ("Sister"), began handling his checkbook. Ward first met Wife in September 2004 while visiting in Russellville, Kentucky. He suffered another stroke in July 2005, at which time he became a patient at the Lakeshore Wedgewood Rehabilitation Center and Nursing Home in Davidson County. In early 2006, Wife started dating Ward while he lived at Lakeshore, and, in April 2006, the couple were married. They had been married for approximately 30 days when Ward suffered another stroke during the couple's honeymoon in Florida.

Ward underwent brain surgery while still in Florida. According to the guardian ad litem, Wife had a nervous breakdown at that time. Sister began making health care decisions regarding Ward pursuant to a power of attorney for health care dated July 25, 2005. The power appointed her as his health care agent. Upon returning to Nashville, Ward resumed living at Lakeshore. The May 2006 surgery left Ward unable to care for himself. His condition necessitates round-the-clock nursing care.

On February 1, 2007, John R. Ackerman ("Brother"), Sister, and William Paul Ackerman, III ("Son") (collectively "the relatives"), filed a petition in the Davidson County Probate Court seeking the appointment of a conservator for Ward.

A guardian ad litem was appointed on February 8, 2007. At a hearing held on February 22, 2007, two attorneys representing Wife were given a copy of the guardian ad litem's report, but Wife apparently terminated the employment of both attorneys prior to the hearing. Neither the attorneys nor Wife filed any pleading in opposition to the relatives' petition. Jurisdiction was not opposed. It is undisputed that Wife did not oppose the appointment of a conservator for Ward, nor did she contest the necessity for the appointment of one.

After the hearing, the trial court ordered that the relatives be appointed as temporary co-conservators over Ward's person and property. The order provides that Wife is allowed a 20–minute visit with Ward for the purpose of allowing her to see how he is doing. She was ordered to have her personal physician give the court an affidavit "that states in [the doctor's] professional opinion if her condition is such that he believes it is in her best interest to be able to meet with (visit) and communicate with her husband ... [and] ... whether or not her medical condition is such that she is capable of doing so without a likely dilemma, as evidenced by previous anxiety situations."

On March 22, 2007, Wife filed a notice of appeal with respect to the order from the February 22, 2007 hearing—an order that only named the relatives as *temporary* co-conservators. A final hearing was scheduled for March 27, 2007. The trial court's order pertaining to the February 22, 2007, hearing was not signed until March 27, 2007. A second order deleting the "temporary" designation was signed on March 30, 2007. At the March 27, 2007, hearing, the court ordered that Sister and Son be the co-conservators for Ward. The order states that Wife was not present at the final hearing in this matter and, therefore, made no objection to the trial court's jurisdiction or the final appointment of the

---

1. Ward was formerly a professional staff drummer for Nashville's RCA recording studios, the Grand Ole Opry, 1 and the television show "Hee–Haw." He is also retired from the Davidson County Sheriff's Department.

Sister and Son as conservators. The final order was entered April 20, 2007, along with the property management plan.

## II.

The issue presented for review by Wife, as taken verbatim from her brief, is as follows:

> Whether the Seventh Circuit Court for Davidson County, Tennessee had good cause for the exercise of jurisdiction as to the matters alleged in the Petition For Appointment of Conservator for William Paul Ackerman and whether the Power of Attorney that was exercised to place Mr. Ackerman in a Nursing Home, in the state of Tennessee, was, in fact, a valid, legal document.

In her reply brief, Wife stated that her appeal "is based on the question of the authority for jurisdiction concerning the Appointment of Conservator for her husband and has nothing whatsoever to do with *WHO* is appointed to serve as Conservator." (Capitalization and emphasis in original).

## III.

Our standard of review in this non-jury case is de novo upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 28–9 (Tenn.1996); Tenn. R.App. P. 13(d). The trial court's factual findings, however, are presumed to be correct and we must affirm such findings absent a preponderance of evidence to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

## IV.

### A.

■ As a threshold issue, the relatives contend that the order from which Wife appeals—the February 22, 2007, order—only named the relatives as *temporary* co-conservators. The relatives argue that the order from the March 27, 2007, hearing—the final order of the court—was not appealed by Wife. They contend that Wife's appeal should be dismissed for lack of jurisdiction.

Wife, acting pro se in this matter, admits that she filed her appeal before the final order was signed. She has moved this court to suspend the requirement of Tenn. R.App. P. 3. She argues that it is obvious that she would have delayed the filing of her notice of appeal until after the final order if she had been aware of Rule 3.

> Tenn. R.App. P. 3(a) provides as follows:
>
> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Rule 3(a), however, must be read in conjunction with Tenn. R.App. P. 4(d), which provides that

> [a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof.

We conclude that the notice of appeal filed by Wife on March 22, 2007, was "prematurely filed" and, hence, is "treated" as being filed April 20, 2007, the date on

which the final order in this case was entered. We have jurisdiction of this appeal. Accordingly, the relatives' issue is without merit.

### B.

■ Wife asserts that Ward is not a resident of or domiciled in the state of Tennessee but is only in a nursing home in this state to recuperate from his most recent stroke and surgery. She contends that Ward is a resident of Logan County, Kentucky, where the couple was married in April 2006. Thus, she argues that the trial court did not have good cause for exercising jurisdiction as to the matters alleged in the relatives' petition. Accordingly, Wife asserts that the probate court erred when it appointed the Sister and Son as conservators for Ward.

■ The authority for the probate court's jurisdiction is found in Tenn.Code Ann. § 34–13–101 (2007)[2]:

(a) Actions for the appointment of a conservator may be brought in a court exercising probate jurisdiction or any other court of record in any county in which there is venue.

(b) An action for the appointment of a conservator shall be brought in the county of residence of the alleged disabled person.

Because of Tenn.Code Ann. § 34–3–101(b), venue is jurisdictional in conservatorship proceedings. Accordingly, probate and other local trial courts should not exercise jurisdiction over the person or property of disabled persons who are not residents of their geographic area. *In re Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct.App.1995).

■ At any given time, a person may have more than one residence but may have only one domicile or legal residence. *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91, 93 (1964). A person cannot acquire a new domicile or legal residence without first abandoning another. *McElhaney v. Chipman*, 647 S.W.2d 643, 644 (Tenn.Ct.App.1982). To change domicile or legal residence, a person must: (1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence. *Denny v. Sumner County*, 134 Tenn. 468, 184 S.W. 14, 16 (1916).

In *Clayton*, 914 S.W.2d at 89, the court held that " 'the term county of residence' in [now Tenn.Code Ann. § 34–3–101(b) ] means the county of the disabled person's legal residence or domicile and that our courts cannot exercise personal jurisdiction in proceedings to appoint a conservator over disabled persons who just happen to be within their territorial jurisdiction." *Id.* at 91. "Because of the fiduciary nature of the responsibilities, the court with the closest ties to the disabled person and his or her family and property should be the court that exercises jurisdiction in a conservatorship proceeding." *Id.* at 90.

Ward has lived most of his life in Tennessee. He receives a retirement pension from the Davidson County Sheriff's Department. For the most part, he has resided at Lakeshore since approximately June 2005. Since returning from Florida after his most recent stroke, Ward has been residing in Davidson County at Lakeshore. Prior to living at Lakeshore, Ward lived in Nashboro Village in Davidson County. He is not someone who just happens to be within the court's territory; his closest ties are clearly with Davidson County, Tennessee, and not Russellville,

---

**2.** The former chapter on conservatorship generally, Tenn.Code Ann. §§ 34–13–101 to 34– 13–109, was transferred to §§ 34–3–101 to 34–3–109 in 2001.

Kentucky. We do not find that Ward abandoned his ties to Davidson County by living in Russellville, Kentucky, for approximately two weeks upon his marriage to Wife.

A person who is mentally incompetent cannot voluntarily change domicile or legal residence because he or she does not have the requisite intent either to abandon the old domicile or to acquire a new one. *In re Chaffee,* 211 Tenn. 88, 362 S.W.2d 467, 469 (1962); *Hannon v. Hannon,* 185 Tenn. 307, 206 S.W.2d 305, 306 (1948). Wife argues that Ward was incompetent as of July 2005 when he designated Sister and Brother to serve as his agents in a power of attorney.[3] She relies on a letter from Dr. Richard Garman, Jr., dated December 7, 2006, in which he states that when he examined Ward on July 18, 2005, seven days prior to the signing of the power of attorney, Ward was not competent to make decisions on his own behalf. The letter provides, in pertinent part, as follows:

> I have enclosed a copy of my most recent progress note from 12/06/06 on this patient as he was examined in his room at Lakeshore Wedgewood in Nashville, Tennessee. This patient will need long-term care to sustain himself. He has mental status changes, is confused, and has some expressive and receptive aphagia. He is also very easily manipulated and agitated and has a history of noncompliance. He needs supervision with his medication and needs to avoid alcohol completely. This patient is not competent to make medical, legal, or financial decisions and would not be competent at this point to give a deposition. On my examination on 12/06/06 the patient did not know who the President of the United States is or the Mayor of Nashville, or where he was living, or what the date, time of day, month, or year are. This patient is not, and will not be, competent to make decisions in regards to his own behalf. He was also not capable of making decisions when I first examined this patient on 07/18/05....

As far as Wife is concerned, this letter proves too much. The evidence—particularly the letter from Dr. Garman dated December 7, 2006—does not preponderate against, but rather is consistent with, a finding that Ward was not competent to change his domicile to Kentucky from and after July 18, 2005, the date upon which Dr. Garman first examined him and found him "not ... competent to make decisions in regard to his own behalf." There is nothing in the record even remotely suggesting that Ward changed his domicile from Tennessee to Kentucky at any time prior to July 18, 2005. On the contrary, *all* of the evidence supports the conclusion that Ward was, at all critical times in this case, a domiciliary of Davidson County, Tennessee.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Cathy Drake–Ackerman. This

---

**3.** The document provided, in part, as follows: This instrument is intended to avoid the need for a court-appointed conservator or other fiduciary, but in the event an action is filed in Court for the appointment of a conservator or other fiduciary, I hereby nominate my sister and brother, SAMMIE A. GUTHRIE and JOHN R. ACKERMAN, or either of them individually and independently of each other, to be court-appointed conservator or fiduciary. I direct that my said, sister and brother, SAMMIE A. GUTHRIE and JOHN R. ACKERMAN, or any other Successor/Fiduciary be allowed to serve without bond, the same being hereby expressly waived.
(Capitalization in original.)

case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. In view of Wife's pro se status and her sincere attempts to present her arguments despite her mental health difficulties, we do not find this appeal to be frivolous.